# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

| | | |
|---|---|---|
| CHERISH BERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 4887 |
| | ) | |
| BLATT, HASENMILLER, LEIBSKER | ) | Judge Pallmeyer |
| & MOORE LLC, INOVISION, INC., and | ) | |
| INOVISION, a NCOP Company, LLC f/k/a | ) | |
| INOVISION, a Marlin Company, LLC, and | ) | |
| NCO FINANCIAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | JURY DEMANDED |

### FIRST AMENDED COMPLAINT

1.     Plaintiff Cherish Berg files this complaint seeking redress for violations of the

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA") and the Illinois

Collection Agency Act, 225 ILCS 425/1 *et seq.*, ("ICAA").

### *Jurisdiction and Venue*

2.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C.

§ 1692k.

3.     Supplemental jurisdiction over Plaintiff's state law claims should be exercised

under 28 U.S.C. § 1367.

4.     Venue is proper in this district under 28 U.S.C. § 1391(b), as the acts and

transactions that give rise to this action occurred, in substantial part, in this district.

5.     Venue is also proper because Defendants can be found, have agents or transact

business here and the interests of justice require maintenance of the action in this district.

### *Parties*

6.      Plaintiff Cherish Berg is a consumer residing in Chicago, Illinois.

7.      Defendant Blatt, Hasenmiller, Leibsker & Moore, LLC ("Blatt, Hasenmiller") is an Illinois limited liability corporation with a principal office located at 125 S. Wacker Drive, Suite 400, Chicago, Illinois 60606.

8.      Blatt, Hasenmiller is regularly engaged in the business of collecting debts allegedly owed by consumers.

9.      Blatt, Hasenmiller is a "debt collector" as that term is defined by § 1692a(6) of the FDCPA.

10.      Defendants Inovision, Inc. and Inovision, a NCOP Company, LLC, formerly known as Inovision, a Marlin Company, LLC (hereinafter jointly "Inovision"), have a principal place of business in the State of Pennsylvania and, according to their website at www.inovisioninc.com, provide "the after collections solution for bad debt."

11.      Inovision is regularly engaged in the business of collecting defaulted debts allegedly owed by consumers.

12.      Inovision is a "debt collector" as that term is defined by § 1692a(6) of the FDCPA.

13.      NCO Financial Systems, Inc. ("NCO Financial") is a Pennsylvania corporation that has a registered agent in the State of Illinois.

14.      NCO Financial is regularly engaged in the business of collecting defaulted debts allegedly owed by consumers.

15.      NCO Financial is a "debt collector" as that term is defined by § 1692a(6) of the FDCPA.

*Facts*

16.    On August 30, 2006, Plaintiff was served with a summons and complaint.

17.    The summons and complaint were signed and filed by attorneys at Blatt Hasenmiller, on behalf of its clients Inovision and NCO Financial.

18.    Inovision's collection complaint states that, "Plaintiff, Inovision, is authorized to do business in the State of Illinois." *See* Ex. A.

19.    On information and belief, and after investigation with the Illinois Secretary of State and Illinois Department of Professional Regulations websites, Inovision is not licensed to do business in Illinois and/or is not registered under the Illinois Collection Agency Act, 225 ILCS 425/4. *See* Ex. B.

20.    Inovision's collection complaint sought to collect two alleged consumer debts purportedly owed by Plaintiff: (1) an alleged debt originally owed to Chase Bank in the amount of $2,971.84; and (2) an alleged debt originally owed to Household Bank in the amount of $4,284.25. *See* Ex. A.

21.    However, attached to the complaint seeking to collect the purported principal balances of $2,971.84 and $4,284.25 was an Inovision affidavit – but signed by an employee of NCO Financial – showing entirely different principal balances of $1,848.96 and $3,048.40, with additional interest of $2,358.73 on each account. *See* Ex. A.

22.    Plaintiff, believing the above balances to be false, denied owing the debts that Inovision claimed she owed and hired attorneys to represent her in the collection action.

23.    On November 30, 2006, Plaintiff's attorneys filed an appearance on her behalf in the collection action.

24.     As of November 30, 2006, Inovision and its attorneys – Blatt, Hasenmiller – were on notice that Plaintiff was represented by counsel with regard to the alleged debts.

25.     On more than one occasion after November 30, 2006, including but not limited to March 1, 2007, representatives from Blatt, Hasenmiller called Plaintiff directly to ask her to settle the debts at issue in the collection action.

26.     On July 9, 2007, one day before a scheduled arbitration hearing on the case and without explanation, Defendants dismissed the case against Plaintiff without prejudice before any finding as to liability was rendered. While no judgment was entered, the specter of a re-filed lawsuit lingers over Ms. Berg.

## COUNT I
### *Violations of the Fair Debt Collection Practices Act*
### *Against Defendant Blatt, Hasenmiller*

27.     Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

### Phone Call Violation

28.     Section 1692c of the FDCPA provides, in relevant part, that:

(a)     *Without the prior consent of the consumer given directly to the debt collector of the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt –*

(2)     *if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address ...*

29.     Defendant Blatt, Hasenmiller violated § 1692c of the FDCPA by calling Plaintiff directly to ask her to settle the debts at issue.

30.    On more than one occasion after November 30, 2006, including but not limited to March 1, 2007, representatives from Blatt, Hasenmiller called Plaintiff and asked her to settle the debts at issue in the collection action.

31.    Blatt, Hasenmiller contacted Plaintiff about the alleged debts, despite the fact that it knew she was represented by counsel with respect to those debts.

32.    Defendant's violation of § 1692c(a)(2) gives rise to a claim for actual and statutory damages and reasonable attorneys' fees and costs.

### False Statements in its State Court Complaint and Accompanying Affidavit

33.    Section 1692e states, in relevant part, that a debt collector "may not use any false, deceptive or misleading representation in connection with the collection of any debt."

34.    Section 1692e(10) prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"

### First False Representation

35.    When Defendant Blatt, Hasenmiller served Plaintiff with its state court complaint it represented to her that Inovision was "authorized to do business in Illinois."

36.    Inovision is not "authorized to do business in Illinois."

37.    Inovision is not licensed to do business in Illinois.

38.    Inovision is not registered under the Illinois Collection Agency Act.

39.    Blatt, Hasenmiller violated § 1692e by falsely representing that Inovision was "authorized to do business in Illinois."

### Second Misleading Representation

40.     When Defendant Blatt, Hasenmiller served Plaintiff with its state court complaint and the affidavit of indebtedness it drafted it represented that Crystal Heckstall was "an employee/agent of: INOVISION."

41.     At the time she signed the affidavit at issue, Crystal Heckstall was not an employee of Inovision.

42.     On information and belief, at the time she signed the affidavit at issue, Crystal Heckstall was an employee of NCO Financial Services, Inc.

43.     The use of the term "an employee/agent of: INOVISION" in the affidavit of Crystal Heckstall is misleading in that it implies Crystal was an employee of Inovision and not the employee of a completely separate company, NCO Financial Services, Inc.

44.     Blatt, Hasenmiller did not candidly draft the affidavit as follows: "affiant is an employee of NCO Financial Systems, Inc. which is the agent for Inovision, the holder this debt" because by so doing, it would impair its ability to collect the debt.

45.     Defendant Blatt, Hasenmiller violated the FDCPA, § 1692e and 1692e(10) by the above misrepresentation.

### Third Misleading Representation

46.     The affidavit of indebtedness, signed by Crystal Heckstall, an employee of NCO Financial, states that the amounts of the alleged debt contained in the affidavit are from the "original books and records of" Inovision.

47.     The above statement misrepresents the authenticity and actual origins of the affidavit in a number of ways.

48.     Crystal Heckstall, an NCO Financial employee, (not an employee of Inovision), regularly signs several hundred affidavits of this type each day and the amounts contained in

those affidavits are taken from Blatt Hasenmiller, not Inovision. It is Blatt which inputs the information into the affidavit.

49.     The information is not taken from the original books and records of Inovision as Inovision does not have any books and any records.

50.     The data contained in NCO Financial's computer system is a copy of data electronically converted and uploaded, (along with hundreds of thousands of other accounts), from CFS's computer system, (a bankrupt debt purchaser), which in turn was electronically converted and uploaded as a copy from other computer systems when CFS purchased millions of similar accounts from various banks, like Household and Chase Bank.

51.     Defendant Blatt, Hasenmiller violated the FDCPA, § 1692e and 1692e(10) by the above misrepresentation.

### Fourth Misleading Representation

52.     The affidavit of indebtedness, drafted by Blatt Hasenmiller and signed by Crystal Heckstall, an employee of NCO Financial, represents that the amounts of the alleged debts come from the "original books and records of" Inovision and reflect interest on the account ending in number 5517 as $2,358.73.

53.     At the time the affidavit was signed, the interest on the account ending in number 5517 was not $2,358.73.

54.     At the time the affidavit was signed, NCO Financial's computer system showed interest on the account ending in number 5517 in an amount different than $2,358.73.

55.     Defendant Blatt, Hasenmiller violated the FDCPA, § 1692e, § 1692e(2)(A) and 1692e(10) by the above misrepresentation.

### Fifth Misleading Representation

56.     The affidavit of indebtedness, drafted by Blatt Hasenmiller and signed by Crystal Heckstall, an employee of NCO Financial, represents that the amounts of the alleged debts come from the "original books and records of" Inovision and reflect interest on the account ending in number 4288 as $2,358.73.

57.     At the time the affidavit was signed, the interest on the account ending in number 4288 was not $2,358.73.

58.     At the time the affidavit was signed, NCO Financial's computer system showed interest on the account ending in number 4288 in an amount different than $2,358.73.

59.     Defendant Blatt, Hasenmiller violated the FDCPA, § 1692e, § 1692e(2)(A) and 1692e(10) by the above misrepresentation.

### Sixth Misleading Representation

60.     The affidavit of indebtedness, drafted by Blatt Hasenmiller and signed by Crystal Heckstall, an employee of NCO Financial, represents that the amounts of the alleged debts come from the "original books and records of" Inovision and reflect a total balance of $4,207.69 for the account ending in number 5517.

61.     At the time the affidavit was signed, the total balance on the account ending in number 5517 was not $4,207.69.

62.     At the time the affidavit was signed, NCO Financial's computer system showed a total amount owed on the account ending in number 5517 in an amount different than $4,207.69.

63.     Defendant Blatt, Hasenmiller violated the FDCPA, § 1692e, §1692e(2)(A) and 1692e (10) by the above misrepresentation.

### Seventh Misleading Representation

64.     The affidavit of indebtedness, drafted by Blatt Hasenmiller and signed by Crystal Heckstall, an employee of NCO Financial, represents that amounts of the alleged debts come from the "original books and records of" Inovision and reflect a total balance of $5407.13 for the account ending in number 4288.

65.     At the time the affidavit was signed, the total balance on the account ending in number 4288 was not $5,407.13.

66.     At the time the affidavit was signed, NCO Financial's computer system showed a total amount owed on the account ending in number 4288 in an amount different than $5,407.13.

67.     Defendant Blatt, Hasenmiller violated the FDCPA, § 1692e, § 1692e(2)(A) and 1692e(10) by the above misrepresentation.

### **Eighth Misleading Representation**

68.     In its capacity as attorney debt collectors, Defendant Blatt, Hasenmiller represents that it has reviewed the collection file of each consumer sued and has made an independent determination that a lawsuit or other legal proceeding is warranted and appropriate.

69.     In fact, § 1692e(3) of the FDCPA prohibits debt collectors from falsely representing that a communication is from an attorney when it is not from an attorney in any meaningful sense.

70.     Here, Defendant Blatt, Hasenmiller represented to Plaintiff that it reviewed her collection file and determined that, (1) a lawsuit was appropriate, and (2) a particular amount of debt was due and owing.

71.     The lack of meaningful attorney review is apparent given the contradiction between the amounts sought to be collected in the face of the complaint and the face of the affidavit Blatt, Hasenmiller drafted.

72.    The lack of meaningful attorney review is also apparent given the fact that the complaint lacks the correct corporate name of the entity bring this action.

73.    The lack of meaningful attorney review is also apparent given the fact that the complaint drafted by Blatt, Hasenmiller claims that Inovision is "authorized to do business in the State of Illinois" when this information did not come from Inovision or NCO Financial and Inovision is not so authorized and has no reason to claim to be authorized.

74.    Defendant's violation of § 1692e(3) give rise to a claim for actual statutory damages and reasonable attorneys' fees and costs.

### Damages

75.    The sole basis of the alleged debt in state court was the Affidavit of Indebtedness.

76.    The Affidavit of Indebtedness is misleading as it implies, (1) it comes from an Inovision Employee, (Crystal Heckstall is really an NCO Financial employee), (2) Crystal reviewed the affidavit, (when Crystal regularly signs more than 200 such affidavits in a day), (3) the information contained in the affidavit is directly from original books and records of Inovision, (when the affidavit was prepared using Blatt, Hasenmiller's information), and, (4) was reviewed by an attorney.  In fact, the information on the face of the documents demonstrates no meaningful attorney review was performed and the combination of these violations caused Plaintiff to defend a state court action and incur damages.

77.    Among other things, as a result of Blatt, Hasenmiller's conduct, Plaintiff took time off of work to appear in court, had to hire attorneys, and was generally subjected to stress, concern, and embarrassment over being sued, (1) over debts that she does not believe she owes, (2) in conflicting amounts, and (3) in a public forum.

WHEREFORE, Plaintiff Cherish Berg asks that this Court enter judgment in her favor, against Defendant Blatt, Hasenmiller, Leibsker & Moore, LLC, and award the following:

      (A)    Statutory and actual damages as provided under the FDCPA, 15 U.S.C. § 1692k;

      (B)    Reasonable attorney fees, litigation expenses and costs incurred in bringing this action; and

      (C)    Any other relief that this Court deems appropriate and just under the circumstances.

## COUNT II
### *Violations of the Fair Debt Collection Practices Act*
### *Against Defendant Inovision and NCO Financial*

78.    Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

79.    All of the actions ascribed to Inovision were in fact carried out by NCO Financial employees.

### First False Representation

80.    Inovision's and NCO Financial's affidavit of indebtedness signed by Crystal Heckstall, an NCO Financial employee, represents that Inovision was "authorized to do business in Illinois."

81.    Inovision is not "authorized to do business in Illinois."

82.    Inovision is not licensed to do business in Illinois.

83.    Inovision is not registered under the Illinois Collection Agency Act.

84.    Defendants Inovision and NCO Financial violated § 1692e by falsely representing that Inovision was "authorized to do business in Illinois."

### Second Misleading Representation

85.     The affidavit of indebtedness represents that Crystal Heckstall was "an employee/agent of: INOVISION."

86.     At the time Crystal Heckstall signed the affidavit at issue, Crystal Heckstall was not an employee of Inovision.

87.     On information and belief, at the time Crystal Heckstall signed the affidavit at issue, Crystal Heckstall was an employee of NCO Financial Services, Inc.

88.     The use of the term "an employee/agent of: INOVISION" in the affidavit of Crystal Heckstall is misleading in that it implies Crystal was an employee of Inovision and not the employee of a completely separate company, NCO Financial Services, Inc.

89.     Inovision and NCO Financial Services, Inc. did not candidly represent in their affidavit that the: "affiant is an employee of NCO Financial Systems, Inc. which is the agent for Inovision, the holder this debt" because by so doing it would impair their ability to collect the debt.

90.     Defendants Inovision and NCO Financial violated the FDCPA, § 1692e and 1692e (10) by the above misrepresentation.

### **Third Misleading Representation**

91.     The affidavit of indebtedness, signed by Crystal Heckstall, an employee of NCO Financial, states that amounts of the alleged debt contained in the affidavit are from the "original books and records of" Inovision.

92.     The above statement misrepresents the authenticity and actual origins of the affidavit in a number of ways.

93.     Crystal Heckstall, an NCO Financial employee, (not an employee of Inovision), regularly signs several hundred affidavits of this type each day and the amounts contained in

those affidavits are taken from Blatt Hasenmiller, which inputs the information into the affidavit itself.

94.    The information is not taken from the original books and records of Inovision as Inovision does not have any books and any records.

95.    The data contained in NCO Financial's computer system is a copy of data electronically converted and uploaded, (along with hundreds of thousands of other accounts), from CFS's computer system, (a bankrupt debt purchaser), which in turn was electronically converted and uploaded as a copy from other computer systems when CFS purchased millions of similar accounts from various banks, like Household and Chase Bank.

96.    Defendants Inovision and NCO Financial violated the FDCPA, § 1692e and 1692e (10) by the above misrepresentation.

### Fourth Misleading Representation

97.    The affidavit of indebtedness signed by Crystal Heckstall as an employee/agent of Inovision, but who was really an employee of NCO Financial, represents that the amounts of the alleged debts come from the "original books and records of" Inovision and reflect interest on the account ending in number 5517 as $2,358.73.

98.    At the time the affidavit was signed the interest on the account ending in number 5517 was not $2,358.73.

99.    At the time the affidavit was signed, NCO Financial's computer system showed interest on the account ending in number 5517 as different than $2,358.73.

100.    Defendants Inovision and NCO Financial violated the FDCPA, § 1692e, § 1692e(2)(A) and 1692e (10) by the above misrepresentation.

### Fifth Misleading Representation

101.    The affidavit of indebtedness signed by Crystal Heckstall as an employee/agent of Inovision, but who was really an employee of NCO Financial, represents that amounts of the alleged debts come from the "original books and records of" Inovision and reflect interest on the account ending in number 4288 as $2,358.73.

102.    At the time the affidavit was signed, the interest on the account ending in number 4288 was not $2,358.73.

103.    At the time the affidavit was signed, NCO Financial's computer system showed interest on the account ending in number 4288 in an amount different than $2,358.73.

104.    Defendants Inovision and NCO Financial violated the FDCPA, § 1692e, § 1692e(2)(A) and 1692e (10) by the above misrepresentation.

### Sixth Misleading Representation

105.    The affidavit of indebtedness signed by Crystal Heckstall as an employee/agent of Inovision, but who was really an employee of NCO Financial, represents that the amounts of the alleged debts come from the "original books and records of" Inovision and reflect a total balance of $4,207.69 for the account ending in number 5517.

106.    At the time the affidavit was signed, the total balance on the account ending in number 5517 was not $4,207.69.

107.    At the time the affidavit was signed, NCO Financial's computer system showed a total amount owed on the account ending in number 5517 in an amount different than $4,207.69.

108.    Defendants Inovision and NCO Financial violated the FDCPA, § 1692e, § 1692e(2)(A) and 1692e (10) by the above misrepresentation.

### Seventh Misleading Representation

109.    The affidavit of indebtedness signed by Crystal Heckstall as an employee/agent of Inovision, but who was really an employee of NCO Financial, represents that amounts of the alleged debts come from the "original books and records of" Inovision and reflect a total balance of $5407.13 for the account ending in number 4288.

110.    At the time the affidavit was signed, the total balance on the account ending in number 4288 was not $5,407.13.

111.    At the time the affidavit was signed, NCO Financial's computer system showed a total amount owed on the account ending in number 4288 in an amount different than $5,407.13.

112.    Defendants, Inovision and NCO Financial violated the FDCPA, § 1692e, by falsely representing the amounts of the alleged debts purportedly owed by Plaintiff. *See* 15 U.S.C. § 1692e(2)(A).

### Damages

113.    The Inovision affidavit, in and of itself, contained false representations that call into question Defendants' then present ability to prove that Plaintiff owed a debt in any amount to either Inovision or the alleged original creditors, Chase Bank and Household Bank.

114.    Among other things, as a result of Inovision and NCO Financial's conduct, Plaintiff took time off of work to appear in court, had to hire attorneys, and was generally subjected to stress, concern, and embarrassment over being sued, (1) over debts that she does not believe she owes, (2) in conflicting amounts, and (3) in a public forum.

WHEREFORE, Plaintiff Cherish Berg asks that this Court enter judgment in her favor, against Defendants Inovision and NCO Financial, and award the following:

(A)    Statutory and actual damages as provided under the FDCPA, 15 U.S.C. § 1692k;

(B)    Reasonable attorney fees, litigation expenses and costs incurred in bringing this action; and

(C)    Any other relief that this Court deems appropriate and just under the circumstances.

## COUNT III
### *Violations of the Illinois Collection Agency Act*
### *Against Defendant Inovision and NCO Financial*

115.    Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

116.    At all relevant times, there was in full force and effect the Illinois Collection Agency Act, 225 ILCS 425/1, *et seq.*, which states, "It is further declared to be the public policy of this State to protect consumers against debt collection abuse."

117.    Defendant Inovision is a collection agency, as that term is defined in 225 ILCS 425/2.02, because it offers services to collect alleged delinquent debts for compensation or other valuable consideration.

118.    Defendant Inovision also qualifies as a collection agency under 225 ILCS 425/3.

119.    Defendant NCO Financial is a collection agency, as that term is defined in 225 ILCS 425/2.02, because it offers services to collect alleged delinquent debts for compensation or other valuable consideration.

120.    The following activities are also violations of the Illinois Collection Agency Act:

(26)    *Misrepresenting the amount of the claim or debt alleged to be owed.*

(29)    *Collecting or attempting to collect any interest or other charge or fee in excess of the actual debt or claim unless such interest or fee is expressly authorized by the agreement creating the debt or claim unless expressly authorized by law or unless in a commercial transaction such interest or other charge or fee is expressly authorized in a subsequent agreement...*

121.     Defendants Inovision and NCO Financial misrepresented the amount of the debt as to the amount of the debt as the amounts claimed in the Affidavit of Indebtedness were false as set forth above.

122.     Defendant Inovision and NCO Financial misrepresented the amount of interest it was entitled to collect.

123.     Plaintiff was damaged as a result of Inovision and NCO Financial's violations of the Illinois Collection Agency Act. Among other things, Plaintiff took time off of work to appear in court, had to hire attorneys, and was generally subjected to stress, concern, and embarrassment over being sued, (1) over debts that she does not believe she owes, (2) in conflicting amounts, and (3) in a public forum.

WHEREFORE, Plaintiff Cherish Berg asks that this Court enter judgment in her favor, against Defendants Inovision and NCO Financial, and award the following:

     (A)     Actual and punitive damages;

     (B)     Expenses and costs incurred in bringing this action; and

     (C)     Any other relief that this Court deems appropriate and just under the circumstances.

Respectfully submitted,

By: /s/ Lance A. Raphael
One of Plaintiff's Attorneys

Lance A. Raphael
Stacy M. Bardo
Allison Krumhorn
The Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, Illinois 60602
(312) 782-5808

# EXHIBIT A

1644421  BI
2120-Served              2220-Not Served          2620-Sec. of State        (Rev.10/06/1999)CCM1-12D
2121-Alias Served        2221-Alias Not Served    2621-Alias Sec. of State
                                          Returnable in
                        ROOM NO. 602, RICHARD J. DALEY CENTER
                                      9:30 A.M. Sharp
                        In the Circuit Court of Cook County, Illinois

Name All Parties

---

                                        Case No.:        05M1 185845

INOVISION
              PLAINTIFF                  Amount Claimed: $7256.09 +costs

              VS                         Return Date:     09-14-06

CHERISH L SMALL
AKA CHERISH L BERG

              DEFENDANT                  Serve CHERISH L SMALL at:
                                            3821 N WHIPPLE ST #2
                                            CHICAGO, IL      60618

                                            UNKNOWN
                                              ,

                                    ALIAS
                                    SUMMONS

To each defendant:
      YOU ARE SUMMONED and required:

         1. To file your written appearance by yourself or your attorney and pay the required fee
         in Room 602, Richard J. Daley Center, Chicago, Illinois, at or before 9:30 A.M. on
         *09-14-06.
         2.  To file your answer to the complaint in Room 602 as required by Par. 3(c) in
         the Notice to Defendant Below.
IF YOU FAIL TO DO SO, A JUDGEMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED
IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.

To the officer:
this summons must be returned by the officer or person to whom it was given for service, with endorsement of service and
fees, if any, immediately after service, and not less than 3 days before the day for appearance.  If service cannot be
made, this summons shall be returned so endorsed.
            This summons may not be served later than 3 days before the day of appearance.                    AUG 17 2006
                          THERE WILL BE
A FEE TO FILE YOUR APPEARANCE, IF CLAIM        WITNESS_____,20____
IS $1,500.00 OR LESS, FEE WILL BE $110.00,
OVER  $1,500.00 THE FEE WILL BE $120.00,
OVER  $15,000.00 THE FEE WILL BE $140.00.
                                                  Dorothy Brown
                                                  Clerk of the Court
THIS IS AN ATTEMPT TO COLLECT A DEBT, ANY
AND ALL INFORMATION OBTAINED WILL BE USED
FOR THAT PURPOSE.                              Date of Service_____,20____
                                               (To be inserted by officer on copy left with
Name: Blatt, Hasenmiller, Leibsker & Moore LLC    defendant or other person)
Attorney for Plaintiff
Address: 125 S. Wacker Dr., Suite 400
City: Chicago, IL 50606
Telephone: (866) 269-9858
Atty. No. 01237
BLMASUM(03/2005)

1644421

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | | |
|---|---|---|
| INOVISION | ) | |
| Plaintiff | ) | **05M1-185845** |
| | ) | |
| | ) No. | |
| | ) Count I: $ 2971.84+costs |
| v. | ) Count II: $4284.25+costs |
| | ) Total Amount Claimed: $ 7256.09+costs |
| CHERISH L SMALL | ) | |
| AKA CHERISH L BERG | ) | |
| AKA CHERISH L MELVOIN | ) | |
| | ) | |
| Defendant | ) Return Date: 01/03/06 |

### COMPLAINT
### COUNT I

The Plaintiff, INOVISION, claims as follows:

1.   Plaintiff, INOVISION, is authorized to do business in the State of Illinois and the Defendant(s) CHERISH L SMALL AKA CHERISH L BERG AKA CHERISH L MELVOIN is/are a resident of COOK County, Illinois.

2.   The Defendant (s) opened a charge account with CHASE BANK CARD, account number 4226610653355517 agreeing to make monthly payments as required by the terms of the Charge Agreements, for the purchases charged to the account.

3.   Plaintiff is the assignee of said account from CHASE BANK CARD having purchased said account in the regular course of business in good faith and for value.

4.   The Defendant (s) did make purchases and charged same to the account but failed to make the monthly payments called for on the account. There is an account stated in the amount of $2971.84. (See Plaintiff's Exhibit No. 1).

5.   Plaintiff declared Defendant(s) to be in default and demands payment of balance.

Wherefore, the Plaintiff INOVISION, prays for judgment against the Defendant(s), CHERISH L SMALL AKA CHERISH L BERG AKA CHERISH L MELVOIN, in the amount of $2971.84 plus costs .

## COMPLAINT
### COUNT II

The Plaintiff, INOVISION, claims as follows:

1.  Plaintiff, INOVISION, is  authorized to do business in the State of Illinois and the Defendant(s) CHERISH L SMALL AKA CHERISH L BERG AKA CHERISH L MELVOIN is/are a resident of COOK County, Illinois.

2.  The Defendant (s) opened a charge account with HOUSEHOLD BANK, account number 5433391004754288 agreeing to make monthly payments as required by the terms of the Charge Agreements, for the purchases charged to the account.

3.  Plaintiff is the assignee of said account from HOUSEHOLD BANK having purchased said account in the regular course of business in good faith and for value.

4.  The Defendant (s) did make purchases and charged same to the account but failed to make the monthly payments called for on the account.  There is an account stated in the amount of $4284.25 (See Plaintiff's Exhibit No. 1).

5.  Plaintiff declared Defendant(s) to be in default and demands payment of balance.

Wherefore, the Plaintiff INOVISION, prays for judgment against the Defendant(s), CHERISH L SMALL AKA CHERISH L BERG AKA CHERISH L MELVOIN, in the amount of $ 4284.25 plus costs .

Blatt, Hasenmiller, Leibsker, and Moore LLC - 01237
125 S. Wacker, Suite 400
Chicago, IL 60606
(866) 269-9858

### THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

STATE OF
COUNTY OF

## AFFIDAVIT OF INDEBTEDNESS

The undersigned, being duly sworn, deposes and states that he/she is an employee/agent of:
INOVISION
and has knowledge of the account balance, and is duly authorized to make this affidavit.

Affiant states that the amounts shown below are taken/calculated from the original books
and records of the above named plaintiff, and based on information and belief, affiant states
that the amount due to
INOVISION
by
CHERISH L SMALL

for funds advanced to defendants(s) or paid to another at defendant(s) request, or for
goods or services    provided to defendant(s) or to another at defendant's request, is the following:
on the following account(s):

| CREDITOR/ACCOUNT NUMBER | PRINCIPAL | + INTEREST | + ADJUSTMENTS | - PAYMENTS | = TOTAL |
|---|---|---|---|---|---|
| INOVISION 4226610653355517 | 1848.96 | 2358.73 | 0.00 | 0.00 | 4207.69 |
| INOVISION 5433391004754288 | 3048.40 | 2358.73 | 0.00 | 0.00 | 5407.13 |
| TOTAL | 4897.36 | 2358.73 | 0.00 | 0.00 | 7256.09 |

Affiant states that the amount shown above is true and correct and that there are no setoffs or
counterclaims  available to defendant(s). Further affiant sayeth not.

Subscribed and Sworn to Before me

_____ 30 ___ day of _____ 20 05

_____          _____
Notary Public                                            Affiant

My Commission Expires:

S. ROSENFELD
NOTARY PUBLIC
MONTGOMERY COUNTY MD
My Commission Expires
June 4, 2006

_____
Title

Date of Service:_____/_____/20_____

Reference #:    1644421
Account #:    4226610653355517

BAFF(11/02 )LT4



# EXHIBIT B



SERVICES     PROGRAMS     PRESS     PUBLICATIONS     DEPARTMENTS     CONTACT

## CORP/LLC - CERTIFICATE OF GOOD STANDING

**Your search for ncop, did not match any records in the Corporation/LLC-GS Search database.**

**Please try again.**

Return to Search

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE



SERVICES    PROGRAMS    PRESS    PUBLICATIONS    DEPARTMENTS    CONTACT

## CORP/LLC - CERTIFICATE OF GOOD STANDING

**Your search for inovision, did not match any records in the Corporation/LLC-GS Search database.**

**Please try again.**

Return to Search

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

# Division of
# Professional Regulation

**Rod R. Blago**

## SEARCH FOR LICENSEE BY PROFESSION:

## THERE ARE 0 RECORDS WHOSE NAME CONTAINS: ncop

## The name, ncop, was not found

### *HINT: You might try searching on part of the name;*
### *e.g. "tyre" instead of "McIntyre"*

Express Access License Look-Up has been approved for use as a primary source for verificati
the Joint Commission of Accreditation of Healthcare Organizations and
the National Committee for Quality Assurance.

If the "Ever Disciplined" field contains a "Y," there has been disciplinary action taken against t
Click on the "Y" to view details of the disciplinary action. If you wish to view comprehensive repor
Acrobat format for disciplines that occurred after September 1996, click **HERE.** The Illinois Dep
Professional Regulation publishes a monthly report detailing disciplinary action taken by the C
Each Disciplinary Report is a listing of all licensees disciplined by the Department within a given
information includes the name of the disciplined professional, the city where he/she was practi
time of action, the discipline imposed and a brief description of the reason for the discipline. A
**Disciplinary Reports** are accurate on the date of issuance or initial date of publication
disciplinary actions may be subject to further court orders that may stay, affirm, reverse,
otherwise alter Department disciplinary orders. Please note that discipline which has been revers
order will not appear in this summary of discipline.

Click **here** for definitions of the different types of disciplinary actions the Department may impose

**NOTE:** This license look-up is accurate for the current license status, but due to computer conve
original issuance date may be in error. If the issuance date shown is 01/01/1997, this is a
generated date, not the original issuance date. For original issuance dates, please contact the De

**Division of Professional Regulation**

Rod R. Blago...

Start a New Search

Printer Fri...

## SEARCH FOR LICENSEE BY PROFESSION:

## THERE ARE 0 RECORDS WHOSE NAME CONTAINS: marlin

## The name, marlin, was not found

## HINT: You might try searching on part of the name; e.g. "tyre" instead of "McIntyre"

Express Access License Look-Up has been approved for use as a primary source for verificati
the Joint Commission of Accreditation of Healthcare Organizations and
the National Committee for Quality Assurance.

If the "Ever Disciplined" field contains a "Y," there has been disciplinary action taken against t
Click on the "Y" to view details of the disciplinary action. If you wish to view comprehensive repor
Acrobat format for disciplines that occurred after September 1996, click **HERE**. The Illinois De[
Professional Regulation publishes a monthly report detailing disciplinary action taken by the E
Each Disciplinary Report is a listing of all licensees disciplined by the Department within a given
information includes the name of the disciplined professional, the city where he/she was practi
time of action, the discipline imposed and a brief description of the reason for the discipline. /
**Disciplinary Reports** are accurate on the date of issuance or initial date of publication
disciplinary actions may be subject to further court orders that may stay, affirm, reverse,
otherwise alter Department disciplinary orders. Please note that discipline which has been revers
order will not appear in this summary of discipline.

Click **here** for definitions of the different types of disciplinary actions the Department may impose

**NOTE:** This license look-up is accurate for the current license status, but due to computer conv
original issuance date may be in error. If the issuance date shown is 01/01/1997, this is a
generated date, not the original issuance date. For original issuance dates, please contact the De

Case: 1:07-cv-04887 Document #: 35 Filed: 05/09/08 Page 29 of 33 PageID #:174
State of Illinois Case: 1:07-cv-04887 Document #: Filed: 08/29/2007 Page 21 of 25 Page 1 of 2
Professional Regulation License Lookup



# Division of
# Professional Regulation



**Rod R. Blagojevich, Governor**

**Division Links**
IDFPR Home
Applicant Services
Consumer Services
Disciplinary Services
Employer Services
Licensee Services
Related Links
Division Overview
General FAQ's
Small Business
Advisories (DCEO)
IDFPR Divisions:
Banking
Financial Institutions
Insurance
Professional Regulation
**Illinois Home**

## License Look-up

has been approved for use as a primary source for verification by The Joint Commission of Accreditation of Healthcare Organizations, the National Committee for Quality Assurance and the American Osteopathic Association's Healthcare Facilities Accreditation Program. License Look-up results include the Licensee's Name, License Number, License Status, City and State, Original Date of Licensure, License Expiration Date and Disciplinary Action Indicator.

*URGENT NOTICE* Until further notice please be aware that the Illinois Department of Financial and Professional Regulation is in the process of moving all of the data from one database to a new database and because of this some of the reasons of disciplinary actions may temporarily not be available. The department is working diligently on moving this information and thank you for your patience and understanding during this time.

August 29, 2007

**Division Features**



**Consumer Services**

**Search by Name** : (Enter profession, last name, business name, first initial)
Profession and Last Name are required fields.

* **NOTE:** *The box for Search Similar Names is checked by default. If you would like to narrow your search results please remove the checkmark from the box and try your search again. Thank you.*

**Mailing Address**
**Springfield Office:**
320 West Washington St
Springfield, IL
62786  Directions

Profession:  COLLECTION AGENCY

**Chicago Office:**
James R.
Thompson Ctr
100 W. Randolph
St
Suite 9-300
Chicago, IL
60601  Directions

Last Name or Business Name:  inovision          Search

Similar Names: ☑

First Initial:          How many rows per page?
          Search ➔

**NOTE:** To search for Real Estate Professions Licensees, Click Here.
**Search by License Number** : Enter the full license number:

**Telephone**
**Springfield Office:**
(217)785-0800
**(217)782-3414**
**For Real Estate Calls**
(217)524-6735
TDD
(217)782-7645
FAX
**Chicago:**
(312)814-4500

License Number:                    Search ➔

**Bulk License Look-up:**
**Bulk License Look-up**

In addition to our License Look-up feature which allows individuals to look up an Illinois professional licensed by IDPR, Bulk License Look-up allows businesses to look up multiple licenses at one time. Please note that the same licensee information is returned from both License Look-up and Bulk License Look-up.

**IDPR Official**
The information furnished is from DPR's official databases and is updated daily. If you are unable to find the licensee information you want, you may contact the division by phone at **(217) 785-0800** or by mail at **320 West Washington, Springfield, IL 62786.**

## Division of
## Professional Regulation

**www.idfpr.com**

**Rod R. Blagojevich, Governor**

Start a New Search

Printer Friendly View

### SEARCH FOR LICENSEE BY PROFESSION:

### THERE ARE 0 RECORDS WHOSE NAME CONTAINS: inovision

### The name, inovision, was not found

### *HINT: You might try searching on part of the name; e.g. "tyre" instead of "McIntyre"*

Express Access License Look-Up has been approved for use as a primary source for verification by the Joint Commission of Accreditation of Healthcare Organizations and the National Committee for Quality Assurance.

If the "Ever Disciplined" field contains a "Y," there has been disciplinary action taken against this license. Click on the "Y" to view details of the disciplinary action. If you wish to view comprehensive reports in Adobe Acrobat format for disciplines that occurred after September 1996, click **HERE**. The Illinois Department of Professional Regulation publishes a monthly report detailing disciplinary action taken by the Department. Each Disciplinary Report is a listing of all licensees disciplined by the Department within a given month. The information includes the name of the disciplined professional, the city where he/she was practicing at the time of action, the discipline imposed and a brief description of the reason for the discipline. All **Monthly Disciplinary Reports** are accurate on the date of issuance or initial date of publication. However, disciplinary actions may be subject to further court orders that may stay, affirm, reverse, remand or otherwise alter Department disciplinary orders. Please note that discipline which has been reversed by court order will not appear in this summary of discipline.

Click **here** for definitions of the different types of disciplinary actions the Department may impose.

**NOTE:** This license look-up is accurate for the current license status, but due to computer conversions, the original issuance date may be in error. If the issuance date shown is 01/01/1997, this is a computer generated date, not the original issuance date. For original issuance dates, please contact the Department.

Case: 1:07-cv-04887 Document #: 35 Filed: 05/09/08 Page 31 of 33 PageID #:176
Case: 1:07-cv-04887 Document #: 7 Filed: 08/29/2007 Page 23 of 25 Page 1 of 2

State of Illinois — Division of Professional Regulation License Lookup 08/29/2007

# Division of Professional Regulation

www.idfpr.com

**Rod R. Blagojevich, Governor**

August 29, 2007

**Division Links**

IDFPR Home
Applicant Services
Consumer Services
Disciplinary Services
Employer Services
Licensee Services
Related Links
Division Overview
General FAQ's
Small Business
Advisories (DCEO)
**IDFPR Divisions:**
Banking
Financial Institutions
Insurance
Professional Regulation
**Illinois Home**

**Consumer Services**

**Mailing Address**
**Springfield Office:**
320 West
Washington St
Springfield, IL
62786   Directions

**Chicago Office:**
James R.
Thompson Ctr
100 W. Randolph
St
Suite 9-300
Chicago, IL
60601   Directions

**Telephone**
**Springfield Office:**
(217)785-0800
**(217)782-3414**
**For Real Estate Calls**
(217)524-6735
TDD
(217)782-7645
FAX
**Chicago:**
(312)814-4500

## License Look-up

has been approved for use as a primary source for verification by The Joint Commission of Accreditation of Healthcare Organizations, the National Committee for Quality Assurance and the American Osteopathic Association's Healthcare Facilities Accreditation Program. License Look-up results include the Licensee's Name, License Number, License Status, City and State, Original Date of Licensure, License Expiration Date and Disciplinary Action Indicator.

**\*URGENT NOTICE\*** Until further notice please be aware that the Illinois Department of Financial and Professional Regulation is in the process of moving all of the data from one database to a new database and because of this some of the reasons of disciplinary actions may temporarily not be available. The department is working diligently on moving this information and thank you for your patience and understanding during this time.

**Search by Name :** (Enter profession, last name, business name, first initial)
Profession and Last Name are required fields.

**\* NOTE:** *The box for Search Similar Names is checked by default. If you would like to narrow your search results please remove the checkmark from the box and try your search again. Thank you.*

Profession:   COLL AGCY BRANCH OFFICE

Last Name or Business Name: inovision        Search
Similar Names: ☑
First Initial:        How many rows per page?
Search ➤

**NOTE:** To search for Real Estate Professions Licensees, Click Here.
**Search by License Number :** Enter the full license number:

License Number:        Search ➤

**Bulk License Look-up:**
**Bulk License Look-up**

In addition to our License Look-up feature which allows individuals to look up an Illinois professional licensed by IDPR, Bulk License Look-up allows businesses to look up multiple licensees at one time. Please note that the same licensee information is returned from both License Look-up and Bulk License Look-up.

**Division Features**

**License Look-up**

**License Renewal**

**Online Address Change**

**Disciplinary Reports**

**News & Publications**

**IDPR Official**
The information furnished is from DPR's official databases and is updated daily. If you are unable to find the licensee information you want, you may contact the division by phone at **(217) 785-0800** or by mail at **320 West Washington, Springfield, IL 62786.**

# Division of
## Professional Regulation

www.idfpr.com

**Dean E. Bluthardt, Director**

**Rod R. Blagojevich, Governor**

Start a New Search

Printer Friendly View

## SEARCH FOR LICENSEE BY PROFESSION:

## THERE ARE 0 RECORDS WHOSE NAME CONTAINS: inovision

### The name, inovision, was not found

### HINT: You might try searching on part of the name;
### e.g. "tyre" instead of "McIntyre"

Express Access License Look-Up has been approved for use as a primary source for verification by the Joint Commission of Accreditation of Healthcare Organizations and the National Committee for Quality Assurance.

If the "Ever Disciplined" field contains a "Y," there has been disciplinary action taken against this license. Click on the "Y" to view details of the disciplinary action. If you wish to view comprehensive reports in Adobe Acrobat format for disciplines that occurred after September 1996, click **HERE**. The Illinois Department of Professional Regulation publishes a monthly report detailing disciplinary action taken by the Department. Each Disciplinary Report is a listing of all licensees disciplined by the Department within a given month. The information includes the name of the disciplined professional, the city where he/she was practicing at the time of action, the discipline imposed and a brief description of the reason for the discipline. All **Monthly Disciplinary Reports** are accurate on the date of issuance or initial date of publication. However, disciplinary actions may be subject to further court orders that may stay, affirm, reverse, remand or otherwise alter Department disciplinary orders. Please note that discipline which has been reversed by court order will not appear in this summary of discipline.

Click **here** for definitions of the different types of disciplinary actions the Department may impose.

**NOTE:** This license look-up is accurate for the current license status, but due to computer conversions, the original issuance date may be in error. If the issuance date shown is 01/01/1997, this is a computer generated date, not the original issuance date. For original issuance dates, please contact the Department.

**Division of Professional Regulation**

www.idfpr.com

Rod R. Blagojevich, Governor

Start a New Search                                                    Printer Friendly View

## SEARCH FOR LICENSEE BY PROFESSION:

### THERE ARE 0 RECORDS WHOSE NAME CONTAINS: ino

#### The name, ino, was not found

### HINT: You might try searching on part of the name;
### e.g. "tyre" instead of "McIntyre"

Express Access License Look-Up has been approved for use as a primary source for verification by
the Joint Commission of Accreditation of Healthcare Organizations and
the National Committee for Quality Assurance.

If the "Ever Disciplined" field contains a "Y," there has been disciplinary action taken against this license. Click on
the "Y" to view details of the disciplinary action. If you wish to view comprehensive reports in Adobe Acrobat
format for disciplines that occurred after September 1996, click **HERE**. The Illinois Department of Professional
Regulation publishes a monthly report detailing disciplinary action taken by the Department. Each Disciplinary
Report is a listing of all licensees disciplined by the Department within a given month. The information includes the
name of the disciplined professional, the city where he/she was practicing at the time of action, the discipline
imposed and a brief description of the reason for the discipline. All **Monthly Disciplinary Reports** are accurate on
the date of issuance or initial date of publication. However, disciplinary actions may be subject to further court
orders that may stay, affirm, reverse, remand or otherwise alter Department disciplinary orders. Please note that
discipline which has been reversed by court order will not appear in this summary of discipline.

Click **here** for definitions of the different types of disciplinary actions the Department may impose.

**NOTE:** This license look-up is accurate for the current license status, but due to computer conversions, the original
issuance date may be in error. If the issuance date shown is 01/01/1997, this is a computer generated date, not
the original issuance date. For original issuance dates, please contact the Department.