## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHERISH BERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 4887 |
| | ) | |
| BLATT, HASENMILLER, LEIBSKER | ) | Judge Pallmeyer |
| & MOORE LLC, INOVISION, INC., and | ) | |
| INOVISION, a NCOP Company, LLC f/k/a | ) | |
| INOVISION, a Marlin Company, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

In July 2005, Defendant Inovision, Inc., the owner of Plaintiff Cherish Berg's debts, retained Defendant Blatt Hasenmiller Leibsker & Moore, LLC ("BHLM"), a law firm based in Chicago, to collect amounts overdue plus interest owed on two credit card accounts in Berg's name. On August 30, 2006, BHLM sued Berg in Cook County Circuit Court for recovery on these outstanding debts. On September 28, 2006, Berg appeared *pro se* at the initial hearing, where she spoke with Larry Ballard, a BHLM collector, advising him that she intended to retain an attorney. The court continued the matter to November 30, 2006, and Berg's counsel filed his appearance on that date. Several months later, on June 27, 2007, Berg filed her answer to the complaint, and on July 9, 2007, Defendants voluntarily dismissed the complaint without prejudice and without having collected on either debt.

On August 29, 2007, Berg filed this lawsuit against Defendants for violations of the Illinois Collection Agency Act, 225 ILCS 425/1 *et seq.* ("ICAA"), and the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692e *et seq.* ("FDCPA"). Specifically, Berg alleges that Defendants made false and misleading statements in their state court complaint as to (1) the amount of debt at issue, (2) the amount of interest due, (3) the name of the entity filing suit and its authority to do business in the State of Illinois, (4) the qualifications of the affiant to the complaint's attached

affidavit, and (5) the "books and records" from which the debts were computed. In addition, Berg contends that BHLM violated the FDCPA in that BHLM contacted her after learning she was represented by counsel, failed to engage in meaningful attorney review of the state court complaint, and permitted one of its collectors to falsely impersonate an attorney. Defendants moves for summary judgment against Berg on all counts. Berg moves for partial summary judgment as to her claims under the ICAA and §§ 1692e, 1692e(2)(A), 1692e(10) of the FDCPA.

## **BACKGROUND**

The identity of two of the named Defendants in this action is somewhat obscure. Defendant Inovision, Inc. has its principal office in Pennsylvania and is part of the NCO Group, an entity that neither party has adequately identified. Inovision, Inc. owns two credit card accounts in the name of Plaintiff Cherish Berg and was the named plaintiff in an Illinois state court debt collection suit against Berg in December 2005. Defendant Inovision, a NCOP company, LLC, f/k/a Inovision, a Marlin Company, LLC (hereinafter "Inovision LLC"), is, according to Defendants, a "sister" company to Inovision, Inc. with no involvement or interest in the collection of Berg's accounts. (Defs.' 56.1 ¶ 4.)

As Defendants concede, it is unclear from the state court complaint whether Inovision, Inc. or Inovision LLC brought the December 2005 suit against Berg. (Def.'s 56.1 Resp. ¶ 8.) Although Inovision, Inc. and Inovision LLC are named Defendants in this case, Berg has not explained her basis for naming Inovision LLC as a Defendant, and there is nothing in the record to indicate that Inovision LLC holds any interest in the accounts at issue. Defendants assert that "Inovision" (again whether Inovision, Inc. or Inovision, LLC is unclear) has no employees and is in fact owned by NCO Portfolio Management, a debt buying company. (Pl.'s 56.1 ¶¶ 22-23; Schlee Dep. at 24-25, Dkt. 7.) NCO Financial, the "sister" company of NCO Portfolio Management, is "Inovision's" "servicing agent" and collects on debts owned by "Inovision." Kenneth Wake, an attorney with BHLM, the law firm that brought suit against Berg on "Inovision's" behalf, testified that NCO Financial "is a major

servicing agent for multiple creditors and debt buyers around the country" and "routinely places accounts with BHLM to pursue collection on behalf of those creditors," including the two accounts owned by Inovision, Inc. in this case. (Wake Decl. ¶¶ 3-4.) Both NCO Financial and NCO Portfolio Management are subsidiaries of the NCO Group. (Schlee Dep. at 24-25.) Neither NCO Financial, NCO Portfolio Management, nor the NCO Group is named as a defendant in this action. Defendants have agreed, for the purposes of Plaintiff's claims in this case, to withdraw any argument that "Inovision" is not a debt collector. (*See* Minute Order 5/13/2008, Dkt. 36.) To avoid confusion, the court will refer to Inovision, Inc. and Inovision LLC collectively as the "Inovision Defendants."

In July 2005, Inovision, Inc. retained BHLM, a law firm based in Chicago, to recover debts past due plus accrued interest on two credit card accounts in Plaintiff's name. (Defs.' 56.1 ¶ 8.) On July 19, 2005, BHLM sent initial demand letters to Plaintiff Berg on both accounts. Berg claims not to have received these letters and did not respond to them. (Defs.' 56.1 ¶ 10; Pl.'s 56.1 Resp. ¶ 10.) On December 12, 2005, BHLM filed a two-count complaint in Cook County Circuit Court, seeking judgment on these accounts. (Defs.' 56.1 ¶ 14.) On August 30, 2006, BHLM served Berg with a summons and the complaint in that suit; why it took BHLM over eight months to serve Berg is not apparent. The complaint named "Inovision" as plaintiff, without further identification.

The amounts sought in the complaint are a subject of confusion. Paragraph 1 of the complaint represented that "Plaintiff, Inovision, is authorized to do business in the State of Illinois." Count I of the complaint sought a total of $2971.84 on "Chase Bank Card, account number 4226610653355517." Count II sought a total of $4284.25 on "Household Bank, account number 543391004754280." The sum total allegedly owed on these accounts was not listed on the face of the complaint. The complaint did, however, include an attached affidavit, signed by an employee of NCO Financial, breaking out the amounts owed on the each account in a chart, reproduced here:

| CREDITOR/ACCOUNT NUMBER | PRINCIPAL | + INTEREST | + ADJUSTMENTS | - PAYMENTS | = TOTAL |
|---|---|---|---|---|---|
| INOVISION 4226610653355517 | 1848.96 | 2358.73 | 0.00 | 0.00 | 4207.69 |
| INOVSION 543391004754280 | 3048.40 | 2358.73 | 0.00 | 0.00 | 5407.13 |
| TOTAL | 4897.36 | 2358.73 | 0.00 | 0.00 | 7256.09 |

Defendants admit that the amounts of interest listed in the first and second rows of this chart represent the total interest owed on both accounts (as stated accurately in the third row), and not the interest due on each individual account. As a result, the "TOTAL" column incorrectly lists the amounts owed on each account as $4207.69 and $5407.13, yielding an apparent total of $9614.82. The "TOTAL" row, however, states the correct total principal and total interest owed and the correct sum total of $7256.09. Unlike the figures in the complaint, the figures that appear in the chart identify the principal and interest amounts due on each account. The amounts sought in the complaint, in contrast, represent the total amount, principal plus interest, sought on each account.

In her deposition, Berg testified on direct examination that she was confused by the contents of the affidavit:

> Q. Okay. And from this complaint, were you able to recognize either of these alleged debts?
>
> A. No, I was not. And actually, the – No, I was not. They don't seem to match with what the affidavit of indebtedness asked. I couldn't match anything.
>
> Q. So can you explain what you mean by that?
>
> A. In here, in the affidavit of indebtedness, it says, you know, principal plus interest totaling, you know, certain amounts, like 42, 54. And none of these amounts on here match the amounts that Inovision states of that – or both Inovision states for both the credit cards. They are both different. None of them match up at all.

(Berg Dep. at 58).

Crystal Heckstall, an employee with NCO Financial, was the affiant to the complaint's

attached affidavit. (Ex. A to Pl.'s Am. Compl.) The affidavit, which appears to be a fill-in-the-blank form, attests that the affiant is "an employee agent of: Inovision and has knowledge of the account balance." In addition, the affidavit's terms state, "Affiant states that the amounts shown below are taken/calculated from the original books and records of the above named plaintiff . . . ." (*Id.*) Berg alleges that none of these statements are true.

David Schlee, Jr., the vice president for attorney network services at NCO Financial, testified to NCO Financial's process for generating an affidavit. First, NCO Financial transmits account information to counsel, in this case BHLM. (Defs.' 56.1 ¶ 36.) BHLM attorneys decide whether to sue and put together an affidavit based on this information, which it returns to NCO Financial. (*Id.* ¶ 33, 36.) When NCO Financial receives a recommendation to sue and accompanying affidavit, the affidavit undergoes a three-step review by the company's mail clerk, the company's legal group, and the affiant, in this case Crystal Heckstall. (Defs.' 56.1 ¶ 33; Schlee Dep. at 53-58, Dkt. 70.) At each stage, the reviewer checks the affidavit against NCO Financial's computer records to make sure it contains "the right plaintiff's name," "the right person" and that "the account number is correct." (Schlee Dep. at 141-142.) Defendant admit that in this case, "the mathematical error in the affidavit apparently escaped Ms. Heckstall's attention." (Defs.' 56.1 ¶ 34; Schlee Dep. at 164-65.) Defendant's filings are silent as the apparent failings in the two earlier stages of review. It is worth noting that Ms. Heckstall reviews, on average, 200 to 300 affidavits per week. (Schlee Dep. at 58.) In addition, NCO Financial provides the law firm filing suit with an interest rate, and the law firm uses that rate in deciding whether to waive or accumulate the interest. (*Id.* at 164-65.) According to Schlee, while NCO Financial supplies the interest rate, it must rely upon the law firm's calculation of interest for the affidavit because different states have different legal standards for calculating and collecting interest and because interest accrues daily. Defs.' 56.1 Resp. ¶ 29.)

Kenneth R. Wake, an attorney with BHLM, described BHLM's own process for compiling and reviewing the affidavit used in the action against Berg. When Berg failed to respond to BHLM's

initial demand letters, BHLM's legal department reviewed her account to determine its "suit worthiness." (Wake Decl. ¶ 3., Dkt. 67.) Using the account information and interest rate supplied by NCO Financial, BHLM determined the amounts of interest accrued on each account. (Defs.' 56.1 Resp. ¶ 27.) A clerk at BHLM then prepared the lawsuit and summons. (Wake Decl. ¶ 9.) Wake testified that these clerks are not lawyers; however, a BHLM attorney does review each complaint and account for "suit worthiness, disputes, bankruptcies, statute of limitations, address and mail returns, etc." before it is filed. (Defs.' 56.1 ¶ 12; Wake Decl. ¶ 10.) Greg Dye, senior associate at BHLM, performed the attorney review on the suit filed against Berg. (Defs.' 56.1 ¶ 13.)

Wake further testified that a "systems error" occurred in this case. As a result, the affidavit reflected an error in the chart's "Interest" column that occurred when BHLM "combined two accounts into a single 'packet,' causing the computer to leave certain fields blank, or insert duplicate data in the affidavits." (Defs.' 56.1 ¶ 31; Wake Dep. 146:22-152:20.) According to Wake's testimony, BHLM's internal review system detected an error in the affidavit and generated at least three drafts of the affidavit attempting to correct these errors. (Defs.' 56.1 ¶ 32; Wake Dep. 162:14-163:16.) When the kind of data error at issue here occurs, Wake testified, BHLM puts it in something called the "support queue," so that one of BHLM's "IT guys" can "make sure the programming is correct." Beyond this information, Wake did not explain what error was detected in the review process, what the "support queue" is, why three different affidavits were generated, or whether any of them correctly stated the amounts of principal and interest due.

On September 14, 2006, Berg filed her appearance *pro se*, and on September 28, 2006, she represented herself before the Cook County Circuit Court. While at court, Berg spoke with Larry Ballard, a collector at BHLM. (Def.'s 56.1 ¶ 18.) Ballard testified that he had no recollection of meeting Berg, but was trained by BHLM lawyers on how to "comport himself" on court calls and how to interact with consumers. (Ballard Dep. 75:5-77:19.) According to Ballard, he typically

approached debtors with the standard introduction, "My name is Larry Ballard. I am with Blatt Hasenmiller Leibsker & Moore and I'm assisting the attorney today." (Ballard Dep. 52:7-11.) Berg testified that Ballard introduced himself by saying, "I'm here representing Blatt, Hasenmiller." (Berg. Dep. at 43, Dkt. 71.) The parties dispute whether Ballard approached Berg inside or outside the courtroom[1] or whether an attorney from BHLM was present. Both parties agree, however, that Berg advised Ballard that she was not interested in settling the case and planned to retain an attorney. (*Id.*) During this conversation, Berg gave Ballard her cell phone number. (*Id.* ¶ 19.) Ballard testified that he placed an exclamation point in front of the number when he recorded it in his file, "to insure we would not call her since she was represented." (*Id.* ¶ 22.) In addition, Ballard presented Berg with a "trial call order" for Berg's review, which was entered by the court. (Pl.'s Am. Compl. ¶ 52.) The court continued the matter to November 30, 2006, on which date Berg's current counsel, Lance Raphael and Stacy Bardo of the Consumer Advocacy Center ("CAC"), appeared. (*Id.* ¶ 17.) Berg gave BHLM CAC's number, and some time later BHLM loaded the contact number for Berg's counsel into its system.[2] (Berg Dep. 56:4-8.)

Berg testified that she received a phone call from BHLM after November 30, 2006, but could not recall the date or month, whether the year was 2006 or 2007, or with whom she spoke. (*Id.* ¶ 29.) Defendant BHLM claims that it did not contact Berg once she told Ballard she intended to retain counsel. BHLM ran a call history report of its dialer system for CAC's number and Berg's cell phone number. (*Id.* ¶ 26.) That report shows that BHLM called CAC several times between December 5, 2006 and April 2007, but does not reflect any calls to Berg's cell phone.

---

[1] Berg alleges in her pleadings that Ballard approached her in the courtroom. Her deposition testimony, however, indicates otherwise: "He took me out of the court and asked me about this information." (Berg Dep. 22:1-7, Dkt. 71.)

[2] Defendants assert that they entered the contact number for Berg's counsel into their system "at this time," presumably either on November 30, 2006 or within a few days thereafter. Berg contends that BHLM's computer records show the number was not entered until December 21, 2006.

On June 27, 2007, Berg filed her answer to collection complaint, and on July 9, 2007, the case was dismissed on Inovision's motion without prejudice. On August 29, 2007, Berg filed this lawsuit.

## **DISCUSSION**

Defendants BHLM, Inovision, Inc. and Inovision LLC have moved for summary judgment against Berg on all counts in the complaint. Berg has filed a cross-motion for partial summary judgment on her ICAA claims against the Inovision Defendants and on her FDCPA claims alleging that the Defendants misstated the alleged debt amounts, falsely represented that "Inovision" was "authorized to do business in the state of Illinois," and falsely represented that the alleged debt amounts were "taken/calculated from the original books and records" of "Inovision" in violation §§ 1692c, 1692c(a)(2), 1692e of FDCPA. For the reasons discussed below, the parties' motions are granted in part and denied in part.

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When presented with cross-motions for summary judgment, the court is required to adopt a "Janus-like perspective," viewing the facts for purposes of each motion through the lens most favorable to the non-moving party. *See Buttitta v. City of Chicago*, 803 F. Supp. 213, 217 (N.D. Ill.1992), *aff'd* 9 F.3d 1198 (7th Cir.1993). The court thus "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005) (quoting *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir.2001)).

## I.     The Collection Complaint

### A.     Application of the FDCPA

The parties devote a great deal of attention to the issue of whether the FDCPA should apply in the context of state court proceedings.  In addressing these arguments, the court notes, first, that the FDCPA does not authorize any litigation privileges that would shield defendants from suit in this case.  *Parkis v. Arrow Fin. Servs., LLS*, No. 07 C 410, 2008 WL 94798, at *5-*6 (N.D. Ill. Jan. 8, 2008) (Coar, J.) (noting FDCPA has no built-in litigation privileges).  Second, while the Seventh Circuit has not specifically addressed the application of the FDCPA to state court pleadings, several courts have concluded that the FDCPA does govern claims challenging state court procedures. *See Jenkins v. Centurion Capital Corp.*, No. 07 C 3838, 2007 WL 4109235, at *2 (N.D. Ill. Nov. 15, 2007) (Darrah, J.) ("present Seventh Circuit case law does not preclude a claim based on false representation in a state court complaint under the FDCPA."); *cf. Beler v. Blatt, Hasenmiller, Leibsker & Moore*, 480 F.3d 470, 473 (7th Cir. 2007) (noting "it is far from clear that the FDCPA governs the contents of pleadings filed in state court").   For example, another judge of this court recently held that a debt collector's alleged misrepresentation in a state court collection complaint that it was "authorized to do business" in Illinois was sufficient to state a claim under the FDCPA. *Guevara v. Midland Funding NCC-2 Corp.*, No. 07 C 5858, 2008 WL 4865550, at *4-*5 (N.D. Ill. June 20, 2008) (Gottschall, J.); *see also Jenkins*, 2007 WL 4109235, at *2-*3 (same).  Similarly, the court has recognized actionable claims for violation of the FDCPA based on a state court complaint that attempted to collect a time-barred debt, *Parkis,* 2008 WL 94798, at *5-*6, and for the alleged misstatement in a state court complaint of the principal balance as an amount inclusive of both principal and interest, *Foster v. Velocity Invs., LLC*, Nos. 07 C 824, 07 C 2989, 2007 WL 2461665, at *2 (N.D. Ill. Aug. 24, 2007) (Hibbler, J.).  *See also Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 473 (7th Cir. 2000) (affirming district court's finding that defendant's false statement in a state court complaint that it was "subrogated" to the original debt-holder's rights violated the FDCPA).

Further, the policy behind the FDCPA supports its application in this case. The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To that end, Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including the false representation of "the character, amount, or legal status of any debt"; "the threat to take any action that cannot legally be taken or that is not intended to be taken"; and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(2), (5) & (10). Berg has shown, and Defendants in this case admit, that the chart in Hickstall's affidavit misrepresented the interest and total amount of debt owed.

While the court is mindful that the FDCPA "was not meant to convert every violation of a state debt collection law into a federal violation," the alleged misstatement of the amount of debt falls squarely within the FDCPA's prohibition on misrepresenting "the character, amount, or legal status of any debt." *See Rosales v. Unifund CCR Partners*, No. 08 C 3533, 2008 WL 5156681, at *2 (N.D. Ill. Dec. 5, 2008) (quoting *Washington v. North Star Capital Acquisition, LLC*, No. 08 C 2823, 2008 WL 4280139, at *2 (N.D. Ill. Sept. 15, 2008)). To characterize the accurate statement of debt in an affidavit appended to a complaint as somehow immunized from the FDCPA's provisions would eviscerate one of the central purposes of the Act. *See Foster*, 2007 WL 2461665, at *2 ("In order to effectuate the intent of the FDCPA, it is reasonable that a document filed in a state court proceeding could be in violation of the FDCPA.")

Defendant BHLM argues that applying the FDCPA to state court pleadings would burden the firm's First Amendment right to petition. Defendants have cited no authority in support of this proposition, and the court is not persuaded that imposing FDCPA standards of accuracy and

fairness on a state court filing constitutes any genuine burden. Nor is the court moved by BHLM's argument that the *Noerr-Pennington* doctrine should be extended to shield attorneys who make false representations in debt collection complaints filed in state court. *See United States Mine Workers of America v. Pennington*, 381 U.S. 657 (1965); *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1960). The FDCPA explicitly bars exactly this kind of speech in debt collection letters and other communications and extending this bar to state court filings does not run afoul of the *Noerr-Pennington* doctrine's goal of protecting the First Amendment right to petition the courts for redress. *See Tarpley v. Keistler*, 188 F.3d 788, 794 (7th Cir. 1999) (defining the purpose reach of the *Noerr-Pennington* doctrine).

## B. Falsity or confusion

The affidavit's inaccurate recitation of the debts and interest owed will not in themselves carry the day for Berg. For Berg to prevail, a showing of more than literal falsity is required ; as the Seventh Circuit recently explained, "[f]or the purposes of § 1692e, . . . a statement isn't 'false' unless it would confuse the unsophisticated consumer." *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 655-56 (7th Cir. 2009). Berg contends that the affidavit's inaccurate interest and totals for the individual accounts did confuse her. She testified that the amounts in the complaint "don't seem to match with what the affidavit of indebtedness asked" and, with respect to the totals in the affidavit, "[n]one of them match up at all." (Berg Dep. at 58.) Luckily, the court need not probe the depth or sincerity of Berg's confusion to resolve her claim. Contrary to both parties' assumptions, the "unsophisticated consumer" standard does not turn on a subjective measure of individual intelligence, but on the perceptions of a reasonable debtor. As the *Wahl* court noted,

> The "unsophisticated consumer" isn't a dimwit. She may be "uninformed, naive, [and] trusting," but she has "rudimentary knowledge about the financial world" and is "capable of making basic logical deductions and inferences."

*Id.* at 645 (internal citations omitted). Since *Wahl*, the Seventh Circuit has also recognized a materiality requirement for allegedly false statements under § 1692e, holding, as a logical extension

of *Wahl*, that "[a] statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Hahn v. Triumph P'ships LLC*, ___ F.3d ___, No. 08-1521, 2009 WL 529562, at *2 (7th Cir. Mar. 4, 2009).

Looking at the complaint and the attached affidavit, the court concludes there are a number of inconsistencies that could potentially puzzle the reasonable consumer. According to Defendants, the face of the complaint accurately states the total amount due on each account including interest, but as Defendants admit, in the affidavit the stated amount of interest owed on each account is false. Count I alleges that a total of $2971.84 is due on the "Chase Bank Card" account, and Count II alleges a total of $4284.25 is due on the "Household Account." The affidavit breaks out these amounts into principal and interest, accurately stating the principal amounts ($1848.96, $3048.40), but incorrectly stating the interest due on each account as $2358.73 (a figure that accurately represents the total amount of interest due). As a result, the total amount owed on each account is overstated.

The affidavit does accurately set forth $4897.36 as the total principal due, $2358.73 as the total interest due, and $7256.09 as the bottom-line total of these figures, equal to the sum of $2971.84 and $4284.25, set forth in the complaint as the amounts owed. The presence of error is, thus, obvious from the affidavit's "TOTAL" column. Still, even the savvy consumer would likely be at a loss to identify wherein the error lay. For example, did the creditor-plaintiff miscalculate the interest due, the principal owed on each account, the total principal owed, the total interest owed, or the total amounts alleged on the face of the complaint? If the debtor sought to challenge either or both of the amounts allegedly owed, how would he or she identify those amounts? In short, the misstated amounts of interest and total funds owed on each account in the affidavit could not only mislead a reasonable yet unsophisticated consumer, but are also material insofar as their inaccuracy would impair the consumer's ability to challenge the state amounts. Defendants' misrepresentations of the interest and total balances due on each account therefore violate the

FDCPA.

###### C.     Bona Fide Error Defense

Where a statement is found to violate the FDCPA, the offending party may raise a defense of "bona fide" error, and Defendants have done so here.  The FDCPA's bona fide error defense allows a debt collector to avoid liability if it can show "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *see Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004.)  The maintenance of reasonably adapted procedures "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort*, 394 F.3d at 539 (citing *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir.2004)).  Berg does not dispute that the error in calculated interest was "bona fide," that is, "made in good faith; a genuine as oppose to a contrived mistake." *Kort*, 394 F.3d at 538.  Rather, Berg argues rather that the processes of review in place at BHLM and NCO Financial were not reasonably adapted to avoid the error that occurred in the affidavit.

Wake of BHLM and Schlee of NCO Financial both testified to the process of preparation and review involved in generating an affidavit for a collection suit.  Schlee in particular expounded at length on the three-step process of review in place at NCO Financial.  Berg urges that this review was inadequate.  She notes that NCO Financial relies on law firms like BHLM to determine the interest charged; thus, the affiant in each case has no way to determine the accuracy of the amounts sought.  Defendants admit that NCO Financial relies on BHLM to calculate the amount of interest owing, using an interest rate supplied by NCO Financial, but contend that if Heckstall had doubted the affidavit's accuracy, she could have called the law firm.  (Defs.' 56.1 Resp. ¶ 28; Schlee Dep. 166:6-9).  Berg notes, however, that Heckstall signs on average 200 to 300 affidavits a day which, assuming a 40-hour work week, allows for less than two minutes to review each affidavit and no reasonable opportunity for any follow-up phone call.  (Schlee Dep. at 58.)

BHLM's own process of review is a little more obscure. Wake testified that NCO Financial supplied Berg's account information and an interest rate, that BHLM used this information to calculate the amount of interest owed on each account, and that BHLM then prepared an affidavit for NCO Financial's review and signature. After Heckstall reviewed and signed the affidavit, a clerk at BHLM prepared the summons and complaint. BHLM attorney George Dye reviewed the complaint and account information before signing the complaint. As for the error in the calculated interest, Wake attributed it to a "systems error" that occurred when BHLM attempted to merge the two accounts, but as Berg notes, Wake does not offer an explanation of how or why such an error might have occurred or the method BHLM uses to calculate interest. Wake also failed to explain how, in spite of an alleged careful process, BHLM could generate an incorrect affidavit three separate times.

Finally, Berg submits in her Statement of Additional Facts (to which Defendants filed no response) a complaint that "Inovision" filed in another lawsuit that appears to reflect a similar mistake. In that complaint, the plaintiff alleges that defendant, Katherine Dothard, owes $1397.67 on an account with Bank One but, in the attached affidavit, states the amount of principal owed as $2199.14, the amount of interest owed as $193.53 and the total amount sought as $2392.67. ("Dothard Complaint," Ex. 6 to Pl.'s 56.1 Resp.; Pl.'s Stmt. of Add'l Facts ¶ 5, Dkt. 81.)

Defendants have offered some evidence of procedures in place to avoid errors in the filing of collection complaints. They have nonetheless been unable to explain how the errors in this case occurred or how their processes of review are reasonably designed to prevent these specific kinds of errors. There is, thus, a genuine issue of material fact as to whether Defendants' procedures for reviewing collection complaints and accompanying affidavits were sufficient. *See Ramirez v. Palisades Collection LLC*, No. 07 C 3840, 2008 WL 2512679, at *6 (N.D. Ill. June 23, 2008) (denying summary judgment where a genuine issue of material fact existed as to whether law firm's screening procedures were sufficient for determining whether a collection was barred by the

applicable statute of limitations).  The court therefore grants Plaintiff's Motion for Partial Summary Judgment as to Counts I, II, and III to the extent that Defendants falsely represented the amount of debts and interest due in the complaint and accompanying affidavit and denies Defendants' Motion for Summary Judgment on those counts.

### D. Inovision, Inc.'s Representation it was "Authorized to Do Business" in Illinois

The first paragraph of the state court complaint states that "Plaintiff, Inovision, is authorized to do business in the State of Illinois." (Ex. A to Pl.'s Am. Compl.) Berg contends that this statement is literally false in violation of the FDCPA as neither Inovision, Inc. nor Inovision LLC was  a licensed "collection agency" under the Illinois Collection Agency Act, nor was either entity registered to do business in Illinois.  It is undisputed that neither Inovision defendant is licensed as a "collection agency" or registered to do business in Illinois, and Defendants have agreed to withdraw any argument that Inovision, Inc. is not debt collector for the purpose of this case.  (Minute Order 5/13/2008, Dkt. 36.)  Defendants maintain, however, that Inovision, Inc. was not required to be licensed as a collection agency or registered to do business in Illinois because (i) a  foreign corporation is not required to register with the state of Illinois when it conducts interstate commerce (*see Career Concepts, Inc. v. Synergy, Inc.*, 372 Ill. App. 3d 395, 865 N.E.2d 385, 392 (1st Dist. 2007)), and (ii) filing a lawsuit does not constitute "transacting business" as defined by the Business Corporation Act (*see* 805 ILCS  5/13.75; *St. Louis Hills Urological Assoc. v. Nicoletti*, 153 Ill. App. 3d 1044, 506 N.E.2d 602, 603 (5th Dist.1987)).  *See also Rice v. Palisades Acquisition XVI, LLC*, No. 07 C 4759, 2008 WL 538921, at *2 (N.D. Ill. Feb. 25, 2008) (debt collector's filing of lawsuit in state court did not constitute "transacting business" as a collection agency in Illinois.)

As with Berg's argument that Defendants misrepresented the amount of debt due, the court first asks whether the FDCPA should apply to police allegedly false representations in a state court complaint that the plaintiff is "authorized to do business is Illinois."  In a similar case, the Seventh Circuit held that the alleged misrepresentation of an entity's legal status—in that instance, the

plaintiff's subrogation rights—stated a claim under § 1692e(2) and (10). This court finds that the alleged misrepresentation of Inovision's legal status as an entity "authorized to do business in Illinois" is sufficient to state a claim under the FDCPA.

Turning to the evidence in support of this claim, Berg cites no authority for the proposition, other than the dictionary definition of "authorized," that "authorized to do business" requires either registration or obtaining a license. Under the Illinois Code, "[n]o foreign corporation transacting business in [Illinois] without authority to do so is permitted to maintain a civil action in any court of this State, until the corporation obtains that authority." 805 ILCS 5/13.70(a). An exception exists, however, for transactions involving interstate commerce. *Career Concepts, Inc. v. Synergy, Inc.*, 372 Ill. App. 3d 395, 403 865 N.E.2d 385, 392 (1st Dist. 2007) ("a foreign corporation need not obtain authorization if it simply conducts interstate commerce"). Defendants assert that Inovision, Inc. was merely engaged in interstate commerce at the time it retained BHLM to file suit against Berg in Illinois and therefore needs no additional authorization to bring suit in Illinois. (Defs.' Mem. at 10.)

Berg counters that the Inovision Defendants transacted business as a "collection agency" in Illinois without a license and that, in any event, the substantial number of collection lawsuits "Inovision" has filed in Illinois, between 120 and 200 complaints, amounts to "transacting business" as a collection agency. (Schlee Dep. at 119-121, Dkt. 70; Pl.'s 56.1 ¶ 9.) The former Illinois Collection Agency Act ("ICAA") requires, as a prerequisite to filing suit against an Illinois debtor, the licensure of any foreign "collection agency" engaged in collecting debts in Illinois, unless the collection agency is already licensed in another state. The ICAA, as it existed before the pre-January 1, 2008 amendments, defines a "collection agency" as "any person, association, partnership, corporation, or legal entity who, for compensation, either contingent or otherwise, or for other valuable consideration, offers services to collect an alleged delinquent debt." 225 ILCS 425/2.02 (repealed January 1, 2008). Defendants argue that neither Inovision Defendant is a

"collection agency" under the Act because neither "offer services to collect" debts or collect debts on another's behalf "for compensation." Rather, Inovision, Inc. itself owned Berg's debts and retained BHLM to collect those debts on its behalf. *See Rice*, ("[Defendant] was not attempting to collect [plaintiff's] alleged debt for compensation or for anyone else's benefit; it was attempting to collect the alleged debt for itself. Consequently, [defendant] was not required to be registered under the Illinois Department of Financial and Professional Regulation as required by the ICAA because the ICAA did not apply to [defendant.]") Plaintiff bears the burden of showing that the Inovision, Inc. was a "collection agency" required to obtain license under the former ICAA. In her briefs, Berg cites evidence that NCO Financial placed collection calls to Berg and sent her debt collection letters, but has otherwise failed to show that Inovision, Inc. was seeking collection for compensation or on anyone's behalf save its own as the owner of the debt. (Schlee Dep. at 44-45, Dkt. 70.)

Next, the court agrees with Defendants that filing a lawsuit, or even a great many lawsuits, does not in itself constitute "transacting business" in Illinois, even if the foreign plaintiff is a debt collector. Nor does *Guevara*, cited by Berg, hold otherwise. *See* 2008 WL 4865550, at *4-*5. In that case, Judge Gottschall merely allowed plaintiff's claim under the FDCPA to proceed in order to develop a sufficient record on the issues of whether the defendant debt collector was transacting business in Illinois and, if so, whether the amount of business being transacted required defendant to register or obtain a license in Illinois. *Id.* Nowhere did the court assert that the sheer quantity of a defendant's in-state lawsuits could demonstrate the transaction of business in Illinois. The court hesitated to conclude at the pleading stage that "the filing of lawsuits cannot constitute 'transacting business' when performed by a debt collector," but this observation was based on the then unknown extent of the defendant's debt collection in state, not the number of lawsuits it had filed. *Id.* at *4. At the summary judgment stage, Berg has the burden of showing that Inovision, Inc. transacts business in Illinois and has failed to do so.

Berg has failed to show that the Inovision, Inc. required any additional "authority" under

Illinois law to bring suit in this case. Even assuming arguendo that the statement "authorized *to do business* in Illinois" is literally false as applied to Inovision, Berg has failed to demonstrate how this statement did anything other than further Inovision's exercise of its right to pursue collection against Berg in Illinois state court. The court therefore grants Defendants' motion for summary judgment as to Counts I, II, and III of the complaint pertaining to Defendants' alleged false representations that "Inovision had the right to sue in Illinois" in violation of § 1692e of the FDCPA and denies Plaintiff's motion for partial summary judgment as on those claims.

### E. Affiant as Employee/Agent of "Inovision" and Use of Original Books and Records

Next, Berg contends that Heckstall violated § 1692e by misrepresenting in the affidavit that she was "the employee/agent of: Inovision" when in fact she was employed by NCO Financial, Inovision's "debt servicer." Since NCO Financial acts as Inovision's agent in pursuing collection on its accounts and is part of the same corporate family as Inovision, the court finds Plaintiff's claim without merit. (*See* Defs.' 56.1 ¶ 6; Schlee dep. 10:4-14; 24:6-22.) As Schlee attested in his deposition, NCO Financial forwards Inovision's and other clients' accounts to attorneys around the country for collection. Heckstall was undoubtedly acting as Inovision's agent when she signed the affidavit.

Berg's contention that the affidavit violates § 1692e because it falsely purports to be based on "the original books and records" of "Inovision" is similarly without merit. According to Schlee's testimony, "Inovision" obtains computer records of accounts when purchased and then transfers that information to NCO Financial. (Defs.' 56.1 ¶ 35-36; Schlee Dep. 26:18-28:3, 41:11-42:10.) That the records Heckstall used in reviewing the affidavit were electronic copies stored in NCO Financial's computer records do not make them any less authentic or accurate.

## II. BHLM's Contact With Berg

Berg alleges that BHLM contacted her by phone after learning that she was represented by

counsel in violation of § 1692c(a)(2) of the FDCPA. In her deposition testimony, Berg testified that someone from BHLM contacted her on her cell phone at least once after November 30, 2006, but could not recall the date or with whom she spoke. (Berg Dep. 23:5-27:7.) Berg claims that during this call "[t]hey asked for the number for my counsel, which I had given them." (*Id.* at 56:4-8.) Berg has produced no cell phone records showing any contact from BHLM. For its part, BHLM has produced the complete phone records for Berg's cell phone and the contact number for Berg's counsel, and Berg's cell phone did not appear anywhere therein. (BHLM Call Log, Ex. 5 to Pl.'s 56.1 Resp.) Nevertheless, construing the evidence in the light most favorable to Berg, her testimony constitutes evidence from which a reasonable jury could infer that BHLM contacted her after November 30, 2006, knowing she was represented by counsel. Defendant BHLM's Motion for summary judgment as to Count I for violation of § 1692c(a)(2) of the FDCPA is denied.

### III. BHLM's Lack of Meaningful Involvement and Impersonation of an Attorney in Violation of Section 1692e(3)

Section 1692e(3) of the FDCPA prohibits "false representation or implication that any individual is an attorney or that any communication is from an attorney." Berg claims that BHLM violated § 1692e(3) by representing to her that "(1) a lawsuit was appropriate, and (2) a particular amount of debt was due and owing." (Pl.'s Am. Compl. ¶ 37.) The complaint further contends that "[t]he lack of meaningful attorney review is apparent given the contradiction between the amounts sought to be collected in the complaint and the affidavit from Inovision."

As Defendants correctly note, the FDCPA does not contain a requirement for "meaningful attorney involvement." (Defs.' Mem. at 13.) Rather, the Seventh Circuit has applied the principle to police attorneys whose involvement in the drafting and review of dunning letters is so minimal that it amounts to no more than a "deceptive veneer of the compliance with FDCPA" requirements. *Nielson v. Dickerson*, 307 F.4d 623, 632 (7th Cir. 2002) (internal quotations omitted). While most commonly applied to cases involving "mass mailings" of automatically-generated dunning letters,

the court sees no reason why this principle should not apply equally to the case at bar. As discussed above in addressing Defendants' bona fide error defense, the thoroughness of BHLM's process for preparing and reviewing complaints and accompanying affidavits in debt collection actions is far from clear. Wake testified that the "legal clerks" who are not licensed attorneys prepare the complaint and summons, which are then forwarded to a BHLM attorney for his review and signature. (Wake Decl. ¶ 9-11.) According to Wake's declaration, these legal clerks are trained to check the applicable statute of limitations, to review the account for any disputes, bankruptcies, or payments arguments that are not in default, to check that the debtor's address is correct and that there is no return mail on file, and to review the affidavit to ensure that the client's affidavit, in this case NCO Financial, matches the balance due on file with BHLM. (Wake Decl. ¶ 8.) Wake further stated that the reviewing attorney is trained to check "each account for suit worthiness, check for disputes, bankruptcies and statute of limitations, address and mail return on any letters, etc." before signing the complaint. (*Id.* ¶ 10.) Defendants have failed, however, to demonstrate any meaningful attorney review of the affidavit's contents as compared to the balances set forth on the face of the complaint or the correctness of the calculated interest. Although BHLM may not decide the *rate* of interest, it is still responsible for calculating the correct *amount* of accrued interest and has not adequately explained how it failed to do so here. The court also finds it difficult to believe that a "meaningful" review of the complaint against Berg would have failed to detect the gross discrepancy between the debts stated on the face of the complaint and those stated in the affidavit. Nor, apparently, is the first time that BHLM has made such an error. (*See* Dothard Complaint, Ex. 6 to Pl.'s 56.1 Resp.) There is therefore a genuine issue of material fact as to whether BHLM engaged in meaningful review of the collection complaint and affidavit, and Defendants' motion for summary judgment on this issue is denied.

In addition, Berg has shown the existence of a genuine issue of material fact with respect to her claim that Ballard represented that he was an attorney with BHLM. Berg and Ballard's

deposition testimony conflicts as to (1) whether an attorney for BHLM was present in court on September 28, 2006, (2) whether Ballard stated that he "represented Blatt, Hasenmiller" or was just "assisting an attorney" from BHLM, and (3) whether Ballard approached Berg inside or outside the courtroom. Ballard presented Berg with a proposed trial court order and obtained Berg's consent, an action that could easily be ascribed to an attorney. Further, the parties dispute whether Ballard turned the order over to an BHLM attorney or handed it directly to the judge. (Pl.'s Am. Compl. ¶¶ 52-53; Ballard Dep. 29:5-30:21, 48:23-50:6.) An "unsophisticated consumer" could conceivably have been confused or misled by Ballard's action under these circumstances. *See Durkin v. Equifax Check Servs.*, 406 F.3d 410, 414 (7th Cir. 2005). The court therefore denies Defendants' motion for summary judgment as to Berg's allegations that Ballard implied he was an attorney in violation of § 1692e(3) of the FDCPA.

IV.     **Inovision's Violation of the ICAA**

In Count III of the complaint, Berg alleges that the Inovision Defendants violated certain provision of the ICAA applicable to "collection agencies" operating in Illinois. As discussed above, the court has concluded that neither Inovision Defendant is a "collection agency" within the meaning of the Illinois Collection Agency Act. *See* 225 ILCS 425/1 *et seq.* The court therefore grants Defendants' motion for summary judgment as to Count III of the complaint and denies Berg's Motion for partial summary judgment on that issue.

<u>CONCLUSION</u>

For the reasons discussed above, the parties' motions for summary judgment [60, 64] are granted in part and denied in part. The court grants Plaintiff's motion for partial summary judgment as to Defendants' misrepresentation of the amount of debt alleged owed in violation of §1692e, e(2)(A) and e(10) of the FDCPA and the ICAA, and denies Defendants' motion for summary judgment as to those claims. The court grants Defendants' motion for summary judgment as to Plaintiff's claims under § 1692e of the FDCPA that Defendants falsely represented that Defendant

Inovision was "authorized to do business in Illinois;" that Crystal Heckstall was an agent of Defendant Inovision; that the information set forth in the affidavit was based on Inovision's "original books and records;" and as to Plaintiff's claim that Inovision falsely represented its right to sue Plaintiff in violation of the ICAA,  The court denies Defendants' motion for summary judgment as to Plaintiff's claims under § 1692c(a)(2) of the FDCPA that Defendant BHLM contacted Plaintiff after learning she was represented by counsel; Plaintiff's claim under § 1692e(3) of the FDCPA, that the complaint was not subject to meaningful attorney review; and Plaintiff's claim under §1692e(3) that an employee of BHLM falsely represented that he was an attorney.

ENTER:

Dated: March 31, 2009

_____
REBECCA R. PALLMEYER
United States District Judge